## 8535

### MILLER v. ATLANTIC COAST LINE R. R. CO.

1. EVIDENCE—MASTER AND SERVANT—RULE.—It is not error to admit in evidence a rule of the master for the guidance of his servants, when the rule on its face, disassociated with its connections, might be referred to the duty of the servant in question.

2. RAILROADS—ISSUES—CONDUCTOR—RULE.—Where there is evidence that a yard conductor was operating under a rule applicable also to freight conductors, it is for the jury to say whether he was then discharging a duty imposed by rule on freight conductors.

3. ATTORNEY AND CLIENT.—A plaintiff in an action against a carrier for personal injury is entitled to the advice of his counsel as to whether he will submit to a personal examination by physicians.

4. EVIDENCE.—An opinion of a witness on a question at issue is not admissible.

5. WITNESS—DISCRETION.—No abuse of discretion has been shown in refusal of trial Judge to suspend hearing of case until defendant could get in attendance a physician who had examined plaintiff, and whom plaintiff consented should testify, while being examined in reply.

6. VERDICT.—Refusal to direct a verdict on the grounds: (1) That the only inference from the testimony was that any injury suffered by plaintiff was caused by the negligence of a fellow servant; (2) there is no evidence of negligence within the material allegations of the complaint which will support a recovery; (3) there is no evidence of wilfulness; sustained.

Before RICE J., Sumter, March, 1912. Affirmed.

Action by James A. Miller against Atlantic Coast Line R. R. Co., James W. Sellers, William Rhett and William Woods. Defendant railroad company appeals on the following exceptions:

1. "His Honor erred, it is respectfully submitted, in allowing plaintiff, while his testimony was being taken, to introduce, over defendant's objection, rule 853; whereas, he should have excluded the said rule, because it had no application to the case, the rule book showing that rule 853 had reference solely to freight conductors in charge of freight trains on the line of road, and had no application to switching on yards; and his Honor further erred, it is respectfully submitted, in allowing plaintiff, over defendant's objection, to construe the rules, particularly rule 853; the evidence, objections and rulings being as follows: 'Look at that book and see whether or not that is the rule book for the Atlantic Coast Line; is that the rule book in force October 18, 1908? Yes, sir. Look under the head of freight conductors? Yes, sir. Are you familiar with rule 853? Yes, sir. Was that in force on October 18, 1908? Yes, sir. Did that apply to all conductors? On leaving the sidetrack, yes, sir. We offer rule 853 in evidence.

Mr. McLemore: " 'I object to the introduction of this rule on the ground that it has no application to this case in that the rule itself shows, with the others connected with it, that this rule referred solely to freight conductors in charge of freight trains on the line of road, and has no application to switching on yards.

Mr. Best: " 'I proved by this witness that this is the only rule, and that he was operating this identical rule.

Court: " 'Go ahead and prove it.

" 'Was there any other rule governing the placing of cars on sidetracks other than rule 853?

Mr. McLemore: " 'I object. The rule speaks for itself. There they are, all in the book.

Court: " 'Repeat the question?

" 'Was there any other rule, except rule 853, applying to the leaving of cars on sidetracks?

Court: " 'Now, you are attempting to introduce rule 853?

Mr. Best: " 'Yes, sir.

Court: " 'Yes, sir; I think that is about right, whether or not— There was no other rule. Were you operating under rule 853 at the time? Yes, sir.

Mr. McLemore: " 'I object, of course. There was no other rule.

Court: " 'Let me see the book. I overrule the objection. Let it in.

" 'Now, we again offer rule 853, on page 103, Atlantic Coast Line rule book, September 1st, 1909. Marked Exhibit A.'

2. "His Honor erred, it is respectfully submitted, in sustaining the objection of plaintiff's counsel and in refusing to allow defendant's counsel to elicit plaintiff's answer to the question if he was willing to waive any right that he might have and permit Dr. Parker, referred to in the evidence, to testify in the cause; whereas, he should have required or permitted plaintiff to answer such question so that defendant might have the benefit of the testimony of Dr. Parker if plaintiff had signified his consent for such testimony to be taken; the question, objection and ruling of the Court being as follows: 'Are you willing to waive your rights, if you have such a right, to insist that that is a confidential matter—

Mr. Jennings: " 'The attorneys are conducting his case.

Mr. Best: " 'That is unfair. He has counsel to conduct his case in a legal, orderly way; he has got to yield to the lawyers, under the protection of his lawyers, and we are fully able to protect his rights.

Mr. McLemore: " 'We admit Mr. Miller has a right to permit Dr. Parker to testify, or object to him testifying, on the ground of confidential relation, and I ask him if he is willing to waive that?

Mr. Clifton: " 'We object on the ground that he first has the right to consult his counsel as to whether or no he will waive that right. That is a matter upon which he is entitled to advice, not on the question of fact, but whether he has a

right to confer with his counsel upon the question of his legal privileges, because that is a question of law as to whether it can be gone into.

Court: " 'I am going to rule that out.   I don't think you can go into that question.'

3.  " 'His honor erred, it is respectfully submitted, in sustaining the objection of plaintiff's counsel and in refusing to allow defendant's counsel to elicit plaintiff's answer to the question if he was willing to submit to a physical examination by the physicians referred to in the evidence; whereas, his Honor should have required or permitted plaintiff to answer such question, it being solely a question of a personal privilege of plaintiff which he might waive by submitting to such examination; the question, objection and ruling of the Court being as follows: 'Are you willing to permit all or any of those doctors to examine you at this time?   If my counsel are.   I am asking you if you are willing?   I don't care whether they are or not.

Mr. Clifton: " 'That is the same question.   It has been ruled out.

Mr. Clifton: " 'We object to the answer.   He doesn't have to answer.

Mr. Jennings: " 'He doesn't have to say.

Court: " 'All right, I rule it out.   I sustain the objection.'

4. "His Honor erred, it is respectfully submitted, in allowing the witness, R. W. Bryant, over defendant's objection, to construe rule 853 by testifying that yard conductors worked under said rule on defendant's yard at Columbia; whereas, his Honor should have excluded such testimony, because (a) it was a matter of law for the Court to construe the rules and to say what portion thereof, if any, referred to the duties of yard conductor; (b) it was incompetent for an employee to construe rules provided by the master, particularly by giving them a construction contrary to or inconsistent with the construction placed upon them by the master, and (c) the witness as an engineer was incom-

petent to testify concerning, or to construe rules governing, yard conductors or freight conductors.

5. "His Honor erred, it is respectfully submitted, in permitting plaintiff over defendant's objection while the witness, John Suber, was being examined, to introduce in evidence rule 853, it being submitted that such rule had no application to the switching of cars and the making up of trains on the yard, but had reference solely to the duties of freight conductors in charge of freight trains on the line of road; the evidence, objection and ruling of the Court being as follows: 'We desire to introduce specifically on pages 102, 103 and 104 of the rule book of the Atlantic Coast Line.

Mr. McLemore: " 'Number of rules?

" '842 to 853 inclusive?

Mr. McLemore: " 'We object to the introduction of these particular rules on the ground that none of them—not one of them is applicable to this case, because 842 refers only to the duties of the yardmaster, and there is no allegation in the pleadings, and no evidence now before the Court, which could possibly make that rule competent—which would have any bearing on that rule and upon which that rule could have any bearing; and for the further reason that the rules which follow, 843 to 853 inclusive, upon inspection of the rules themselves, have reference only to freight conductors in charge of freight trains being operated over the line of road, and do not in any way have any reference to the operation of engines or the making up of trains in the yard, and for that reason they are inapplicable to this case, and will be misleading and consequently prejudicial and should be excluded.

Mr. Best: " 'I desire to introduce the rules—I don't care about introducing the other—introduce 853 under the head of freight conductors, rule 853.

Court: " 'You did that yesterday?

Mr. Best: " 'Yes, sir; I am not introducing the other—

Mr. McLemore: " 'I would like to enlarge our objection just a little bit by making the further ground that this rule, under the McCreary case, the whole book is not admissible, unless there is at least one rule in the book which is relevant to the case; if there is no relevant rule in the book, why, then, under the McCreary case, the book cannot be introduced in evidence, and we take the position that there is no rule in the book which is relevant to the case.

Court: " 'Rule 853?

Mr. Best: " 'Yes, sir; rule 853. Shall I proceed?

Court: " 'Is that all at this time that you are introducing?

Mr. Best: " 'There is one other rule which we will point out later. It is a general rule, and we don't remember the number right now.

Court: " 'You withdraw, then, the matter of introducing all from 842 to 853 at present?

Mr. Best: " 'Yes, sir; with your permission, we will withdraw that introduction, and introduce No. 853.

Court: " 'All right.'

6. "His Honor erred, it is respectfully submitted, in allowing the witness, P. P. Finn, over defendant's objection, to construe rule 853 by testifying that yard conductors worked under the said rule on defendant's yard at Columbia; whereas, his Honor should have excluded such testimony, because (a) it was a matter of law for the Court to construe the rules and to say what portion thereof, if any, referred to the duties of yard conductor; (b) it was incompetent for an employee to construe rules provided by the master, particularly by giving them a construction contrary to or inconsistent with the construction placed upon them by the master, and (c) the witness as an engineer was incompetent to testify concerning, or to construe rules governing, yard conductors or freight conductors; the evidence, objections and rules of the Court being as follows: 'What rule does the yard conductors work under?

Mr. McLemore: " 'I object.

" 'In your experience of fifteen years—

Mr. McLemore : " 'I object, first on the ground that it is a question of law for the Court to construe these rules and to say what portion of the rules refer to yard conductors, or any other employee; and on the second ground that it is incompetent for an employee to construe the rules which are provided for his guidance, by giving them any constructions contrary or inconsistent to the constructions given to him by his superior, who makes the rules for him; and on the further ground that the witness having testified he is an engineer is not competent to testify as to a rule governing yard conductors or freight conductors.

Mr. Jennings : " 'They contend the rule does not apply to yard conductors, and I am asking him what rule the yard conductors work under, and I am asking him whether they work under this rule. That is not construing the rule.

Court : " 'You may ask the question.

" 'What rule do the yard conductors work by and under? Well, they work by that rule, supposed to work the freight there is in the yard. Since you have been working for the Coast Line, did they or not work under rule 853 as to breaking of cars and putting freight on? That is their rule all the way through.'

7. "His Honor erred, it is respectfully submitted, in refusing to permit defendant's witness, Dr. S. C. Baker, to give his opinion upon the question if the condition of plaintiff's eyes described by the witness, Dr. J. H. McIntosh, as existing within thirty minutes to one hour after the accident, could have been caused by an injury received on the 18th day of October, 1909; whereas, his Honor should have permitted the witness to answer, because the opinion sought to be elicited was not based on any fact in dispute; the questions, objection and ruling of the Court being as follows: 'Now, doctor, tell us whether or not, in your opinion, that condition of Mr. Miller's eyes, as has been described and as Dr.

McIntosh testifies he found it, within thirty minutes to one hour after the accident—

Mr. Jennings: " 'I object upon the ground—

" 'Let me finish the question. Don't answer the question; whether or not that symptom could have been caused by the injury received on the 18th October, 1909? Don't answer.

Mr. Jennnings: " 'That is about the specific facts in the case, of which the doctor has no specific knowledge, and it seems to me it comes under that case I have handed up to your Honor.

Court: " 'I think you will have to put a hypothetical state of facts. I think under this case you will have to give him a hypothetical question which covers the same statement of facts.'

8. "His Honor erred, it is respectfully submitted, in sustaining the objection of plaintiff's counsel and in refusing to allow the defendant's witness, C. L. Porter, to testify as to whether or not it was practicable or necessary, in the reasonable and practical operation of a railroad upon defendant's Columbia yard, to get the brakes upon cars as they were placed in the making up of trains similar to the character of work being performed at the time of plaintiff's accident; whereas, his Honor should have permitted the witness to testify, he being an expert, and the matter referred to being such that the jury were not capable of reaching a conclusion unaided by such expert testimony; the question, objection and ruling of the Court being as follows: 'Now, Mr. Porter, please state whether in making out the—I will ask this first: Is it practicable; is it reasonably necessary in the practical operation of a railroad, in the Columbia yard or a yard of that kind, with that grade constructed as that yard is, in making up a train which is to be sent out on the road as soon as completed, to put the brakes on all the individual cars as they are placed? Don't answer the question—as they are placed in the track by the switching or yard crew?

Mr. Best: " 'He is asking him what the jury is to decide, question of fact.   He can state how it is done, and what the custom was, and not to do anything but chock them.   That is a question for the jury to say whether that is such a precaution as should have been taken under the circumstances. He can state what the custom was.

Mr. McLemore: " 'Whether or not it is practicable, whether it is reasonably necessary in the practical operation of a railroad or a yard such as the Columbia yard, exactly as the conditions existed there, in the making up of trains and placing of cars as they are placed in the tracks, those cars being placed there for the purpose of, as soon as all are assembled, putting a cab on one end and the engine on the other, and sending it out immediately on the line as a train, and I ask him whether reasonably necessary in the operation of a railroad for the brakes to be put on in that way?

Court: " 'Mr. Best objects to that.

Mr. Best: " 'It is absolutely incompetent under every rule written on the subject—by every textbook on the subject. He can answer that if your Honor permits us to put up a man to show that it is both reasonable and practical to put the brakes and chocks both on.

Court: " 'I overrule that.   I rule that out.   You can't ask that.   It seems to me you are going into a question that is for the jury.'

9. "His Honor erred, it is respectfully submitted, in overruling defendant's motion for leave to suspend the case for such brief time as might be necessary to secure the presence of Dr. Parker, referred to in the record, after plaintiff upon his examination in reply voluntarily offered to permit Dr. Parker to testify, his Honor having prior to such time during the trial of the case, upon the objection of plaintiff's counsel, refused to permit plaintiff to state whether or not he would consent for Dr. Parker to testify, defendant

being thus deprived of the benefit of material evidence vitally affecting the case.

10. "His Honor erred, it is respectfully submitted, in overruling defendant's motion for leave to suspend the trial until the presence of Dr. Parker could be secured, by placing his ruling upon the ground that plaintiff's counsel, notwithstanding plaintiff's consent, would have the right to object to Dr. Parker being produced and his testimony being taken.

11. "His Honor erred, it is respectfully submitted, in overruling defendant's motion made at the close of all the evidence for the direction of a verdict in its favor upon the grounds and for the reasons stated in support of such motion as follows: First. Because the entire testimony conclusively shows if there was any negligence that resulted in injury to plaintiff the only inference which can be drawn from the testimony is that the negligence was that of a fellow-servant of plaintiff. Second. Because there is no evidence of negligence within the material allegations of the complaint which will support a recovery. Third. Because there is no evidence of wilfulness or wantonness.

12. "His Honor erred, it is respectfully submitted, in charging the jury as follows:

" 'The plaintiff put in evidence rule 853, which reads as follows: Mr. Foreman and gentlemen of the jury, I will read it to you and try to give it to you as quick as I can, because I know you are tired.

" " 'Where cars are left on a siding, they must not obstruct street or road crossings. They must see that the brakes are put on tightly, to prevent them from being moved, and that all other precautions against their interfering with trains on the main line are taken.

" 'Now, Mr. Foreman and gentlemen of the jury, this comes under the head of freight conductors in this book, and I leave it to you to say whether or not the track on which they were working was a siding, because I don't know and I can't say; and I leave it further to you to say whether or

not the conductor was operating and working under these rules at the time this accident happened—or the plaintiff's injury, if he was injured. Now, if you find that it was a siding that they were working on, and that the conductor was operating under this rule, then I charge you it was his duty to see that the brakes were put on tightly, because the rule says so distinctly and plainly.'

"The error being that it was the duty of the Court to construe the rule, and the proper construction of the rule is, and the jury should have been instructed, that it has no application to a switching or yard crew engaged in the work of collecting cars to be placed in position to form a train; that is to say, such work as was being performed by plaintiff and his colaborers at the time of the accident in question. The jury should not have been allowed to construe the rule and determine if it applied in this case, and if the rule charged the conductor with the duty of putting on the brakes and taking all other precautions against allowing such cars to go on the main line.

13. "His Honor erred, it is respectfully submitted, in charging plaintiff's request 15 as follows:

" 'I further charge you that I allowed the plaintiff to introduce in evidence rule 853, found in the printed rule book of the defendant, Atlantic Coast Line Railroad Company. I charge you that if you find from the evidence, that the employees working upon the yard of the defendant company, in the city of Columbia, at the time and place in question, were working under this rule, under the directions of the Atlantic Coast Line Railroad Company, or with its knowledge and consent, and if you find that at the time the plaintiff alleges he was injured, if he was injured, this rule was in force, and that he and the crew and the conductor were working and operating under this rule, under the directions of the Atlantic Coast Line Railroad Company, or with its knowledge or consent; then, I charge you, as a matter of law, that rule 853 requires "when cars are left

on a siding, they must not obstruct the street or road crossings. Conductor must see that the brakes are put on tightly to prevent them from being moved, and that all other precautions against their interfering with trains on the main line are taken." '

"The error being (a) that his Honor, as a matter of law, should have construed the rule introduced in evidence and not left to the jury the construction of such rule; (b) that the proper construction of the rule is that it had no application to the case, because it referred solely to freight conductors in charge of freight trains on the line of road, and (c) in leaving to the jury the privilege of construing the rule so as to apply it to the situation existing at the time of plaintiff's accident, and in charging the jury, if they so found that it was the duty of the conductor to see that the brakes on the cars were put on tightly to prevent them from being moved.

14. "His Honor erred, it is respectfully submitted, in overruling defendant's motion for new trial; whereas, he should have granted the motion for the reasons urged in support thereof as set forth in the 1st, 2d, 3d, 7th, 8th, 10th and 11th grounds of such motion, such grounds being as follows:

1. " 'Because there is no evidence of negligence.

2. " 'Because there is no evidence of wilfulness or its equivalent.

3. " 'Because the entire evidence shows that the plaintiff's injury, if any, resulted from the act of a fellow-servant.

7. " 'Because the verdict is excessive.

8. " 'Because the verdict is so excessive as to show on its face that it was the result of whim, caprice, prejudice, passion or sympathy of the jury, and was in response to the excitement caused in the minds of the jury by the argument of one of the counsel for plaintiff, who stated that the railroad company had come into the case and had resorted, in order to escape a verdict against it, to the injection into the

case of filth, slander and falsehood, and the minds of the jury were further inflamed by the suggestion of plaintiff's counsel, in the form of the expression of a wish that the jury could go out and consult the people on the street and the community at large, in order to ascertain their views as to what the verdict should be.

10. " 'Because the, Court erred, it is respectfully submitted, in charging the jury as follows:

" 'Now, one of these books of the rules of the Atlantic Coast Line have been put in evidence, and I have been asked to construe some of these rules. The plaintiff put in evidence rule 853, which reads as follows: Mr. Foreman and gentlemen of the jury, I will read it to you and try to give it to you as quick as I can, because I know you are tired.

" 'When cars are left on a siding, they must not obstruct street or road crossings. They must see that the brakes are put on tightly, to prevent them from being moved, and that all other precautions against their interfering with trains on the main line are taken.'

" 'Now, Mr. Foreman and gentlemen of the jury, this comes under the head of freight conductors in this book, and I leave it to you to say whether or not the track on which they were working was a siding, because I don't know, and I can't say; and I leave it further to you to say whether or not the conductor was operating and working under these rules at the time this accident happened—or the plaintiff's injury, if he was injured. Now, if you find that it was a siding that they were working on, and that the conductor was operating under this rule, then I charge you it was his duty to see that the brakes were put on tightly, because the rule says so distinctly and plainly. In that it was the duty of the Court to construe the rule and the proper construction of such rule, is, and the jury should have been instructed, that it has no application to a switching or yard crew engaged in the work of collecting cars to be placed in position to form a train; that is to say, such work as was

being performed by plaintiff and his colaborers at the time of the accident in question. The jury should not have been allowed to construe the rule and determine if it applied in this case and if the rule charged the conductor with the duty of putting on the brakes and taking all other precautions against allowing such cars to go on the main line.

11. " 'The Court having charged the jury at the request of the plaintiff's counsel:

" 'I charge you, as a matter of law, that a servant assumes dangers incident to his employment, but does not assume the dangers of defective machinery, methods and surroundings, unless he knows it, or unless a person of ordinary prudence, reason and sense, placed in similar circumstances, ought to have known; in other words, the servant assumes all risks of which he has knowledge, or of which he could have had knowledge by the exercise of the ordinary care and prudence of a prudent person,' and having further charged the jury:

" 'All that is good law. If a man goes in as a servant of another, whether a corporation or one person, knowing what he is going into, and knows of the risks incident to that employment, why, he assumes those risks. That is reason. That is a part of his contract.' This being the law of the case, and the jury being absolutely bound by it, the verdict cannot stand, because: (a) The entire evidence shows that the risk, whether ordinary or unusual, was obvious to the plaintiff at the time he undertook the duties of his position, or should have been obvious to him as a man of ordinary prudence, and, therefore, he assumed such risk and under the circumstances cannot recover."

*Messrs. P. A. Willcox, Purdy & Bland, Mark Reynolds* and *Lucian W. McLemore,* for appellant, cite: *Opinion evidence:* 59 S. C. 311; Jones on Ev., secs. 367, 375; 69 S. C. 101; Elliott on R. R., secs. 1782, 1280; 139 Fed. 20. *Master is only required to provide reasonably safe rules and regulations:* 39 S. C. 39; 69 S. C. 529; 72 S. C. 398.

*Messrs. Best & Cunningham, L. D. Jennings, John H. Clifton,* contra.  *Mr. Best* cites: *Plaintiff is not required to submit to personal examination: Best* v. *St. Ry.   As to assumption of risks:* 79 S. C. 512.

*Mr. Jennings* cites: *As to expert opinion:* 59 S. C. 311; 90 S. C. 296.

April 30, 1913.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.  This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendants, while in the employment of the defendant, Atlantic Coast Line Railroad Company, as a locomotive engineer.

The defendants denied the allegations of the complaint except those specifically admitted.

The jury rendered a verdict in favor of the plaintiff against the defendant, Atlantic Coast Line Railroad Company, for thirty-five thousand dollars, and it appealed upon exceptions, which will be reported:

*First Exception:* Immediately after the testimony quoted in the exception the following question and answer appear in the record: "If brakes had been put on the cars on that track, which ran down and struck your engine, as required by that rule, had been put on tightly, would they have remained there on the track, or have gone down on that track?   They would have remained there."

Rule 853 is as follows: "When cars are left on siding they must not obstruct street or road crossings.   They must see that the brakes were put on tightly to prevent them from being moved, and that all other precautions against their interfering with trains on the main line are taken."

We desire to call special attention to the fact that the only objection interposed by the defendant's attorneys to the introduction in evidence of rule 853, was, "on the ground

that it has no application to this case, in that the rule itself shows, *with the other connected with it,* that this rule referred solely to freight conductors in charge of freight trains on the line of road, and has no application to switching on yards." (Italics added.)

In their argument the appellant's attorneys say: "Isolated and deprived of the necessary context, rule 853 might easily be referred to as governing the duties of the yard conductors in the present case." Thus showing that the rule was not objectionable upon its face, but would only become so when considered in connection with other facts. In such cases the rule is thus stated in *Glover* v. *Gasque,* 67 S. C. 34: "It is unquestionably the duty of the Court, in construing a written instrument, to interpret its language, and it may also state the effect thereof where it is susceptible of but one inference; but where the inferences to be drawn from the facts stated in the instrument is in dispute, and such facts susceptible of more than one inference, then the question must be determined by the jury, especially when the inference to be drawn is dependent upon other facts in the case."

"Courts, in the construction of contracts, look to the language employed, the subject matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed." *Nash* v. *Towne,* 5 Wall. 689.

"Doubtless the general rule is that it is the province of the Court to construe written instruments, but it is equally well settled that where the effect of the instrument depends, not merely on its construction and meaning, but upon collateral facts and extrinsic circumstances, the inference of fact to be drawn from the paper must be left to the jury." *West* v. *Smith,* 101 U. S. 363; 2 Paige on Contracts, sec. 1129; *Williamson* v. *Association,* 54 S. C. 582; 32 S. E. 765.

"Where the parties to a contract have given it a particular construction, such construction will generally be adopted by

the Court in giving effect to its provisions; and the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the Court, and in some cases may be controlling." 8 Cyc. 588-9; 21 A. & E. Enc. of Law, 1115.

These principles are recognized in the cases of *Holliday* v. *Pegram,* 89 S. C. 73, and *Watson* v. *Paschall,* 93 S. C. 537.

There is another reason why the exception cannot be sustained.

In the case of *Wilson* v. *Ry.,* 51 S. C. 79, the Court uses the following language: "Whether an engineer, brakeman or switchman is, when exercising his ordinary duties, a fellow servant with a car cleaner, is a question of law. But whether, in a particular case, either of them was engaged in performing certain acts which the law requires of the master, and which would prevent them from being fellow servants, is a question of fact to be determined by the jury. The question as to who are fellow servants is a mixed question of law and fact. It is for the Court to define the relation of fellow servants, but it is for the jury to determine whether the employees in a particular case, come within the definition."

So, in this case, it was for the jury to determine whether, under all the circumstances, the yard conductor in this particular instance, was discharging a duty ordinarily imposed on freight conductors, as there was testimony that he was operating under a rule, also applicable to freight conductors.

This exception is overruled, and as the appellant's attorneys admit that exception V and VI raise practically the same question, they are also overruled.

*Second and Third Exceptions:* In answer to the question, "Are you willing to permit all or any of these doctors to examine you at this time?" the plaintiff answered: "If my

counsel are." Having made answer to the interrogatory, the exceptions raise merely a speculative question. There can be no doubt that the plaintiff was entitled to be advised by counsel as to his rights at every stage of the trial.

These exceptions are overruled.

*Fourth Exception:* What was said in considering the first exception is conclusive of this question.

The seventh exception was abandoned.

*Eighth Exception:* The testimony involved the opinion of the witness on a question at issue in the case. The case of *Easler* v. *Ry.*, 59 S. C. 311, 37 S. E. 938, shows that such testimony was not admissible.

*Ninth Exception:* The motion was addressed to the discretion of his Honor, the presiding Judge, and the appellant's attorneys have failed to satisfy this Court that it was abused.

*Tenth Exception:* What was said in considering the ninth exception is conclusive of this question.

*Eleventh Exception:* Without undertaking to discuss the voluminous testimony in detail, we deem it only necessary to say that the appellant has failed to satisfy this Court that there was error.

*Twelfth Exception:* This exception is disposed of by what was said when the first exception was under consideration.

*Thirteenth Exception:* What has already been said disposes of this exception.

*Fourtenth Exception:* The questions presented by this exception have already been considered, or are dependent upon the view which this Court takes of the facts. The appellant's attorneys have failed to satisfy this Court that there was error in any of the particulars therein mentioned.

Judgment affirmed.

MR. JUSTICE WOODS *concurs in the result.*